IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BARBARA NELSON,<br><br>    Plaintiff,<br><br>vs.<br><br>JULIE KUNKLE, and AMERICAN BLUE RIBBON HOLDINGS, LLC, a Delaware limited liability company;<br><br>    Defendants. | 8:19-CV-329<br><br>MEMORANDUM AND ORDER |

    This matter is before the Court on Defendants' Motion to Dismiss or Compel Arbitration pursuant to Fed. R. Civ. P. 12(b)(6) and 9 U.S.C. §§ 3-4. Filing 16. Plaintiff, Barbara Nelson, sued both American Blue Ribbon Holdings, LLC ("ABRH"), and Julie Kunkle (collectively, "Defendants") for interference and retaliation under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. Filing 1 at 4-6. Plaintiff further alleges Kunkle defamed her, and ABRH violated her rights under (1) the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA"), 29 U.S.C. §§ 1161-68, and (2) the Nebraska Wage Payment and Collection Act ("NWPCA"), Neb. Rev. Stat. § 48-1228 et seq. Defendants request an order dismissing or staying this action because Plaintiff is subject to a mandatory arbitration agreement. Filing 16.

    Pursuant to an Order dated January 29, 2019 (Filing 25), this Court stayed proceedings against defendant ABRH upon ABRH filing a suggestion of bankruptcy (Filing 24). Given the stay in proceedings, the Court will deny ABRH's motion to compel arbitration without prejudice to reassertion should the bankruptcy court lift its stay and will not otherwise address ABRH's request to compel arbitration.

    Because there is a broad presumption in favor of arbitration, the Court determines Plaintiff's claims against Kunkle are subject to arbitration despite her status as a nonsignatory

1

party to the arbitration agreement in question. As a result, the Court will grant Kunkle's Motion to Compel (Filing 16) but will stay the proceedings against Kunkle pending arbitration rather than dismiss them.

## I. BACKGROUND

The Complaint alleges Plaintiff worked as an assistant manager at an ABRH-owned and operated Village Inn restaurant until February 7, 2019. Filing 1 at 1. Kunkle was the general manager and Plaintiff's immediate supervisor at that restaurant. Filing 1 at 1. Plaintiff alleges Kunkle made defamatory statements about her to Village Inn employees, managers, or "others" in August of 2018. Filing 1 at 1, 3. In November and December of 2018, Plaintiff's appendix ruptured, and she developed a bowel obstruction. Filing 1 at 2. Related to these infirmities, Plaintiff alleges Kunkle interfered with her substantive FMLA rights and retaliated against her in violation of the FMLA. Filing 1 at 4-5. Plaintiff similarly alleges ABRH interfered with her substantive FMLA rights, retaliated against her in violation of the FMLA, violated her COBRA rights by failing to notify her of her right to continued coverage and failed to pay out her accrued vacation hours in violation of the NWPCA. Filing 1 at 4-6.

Defendants moved to dismiss or compel arbitration because Plaintiff is allegedly subject to a mandatory arbitration agreement. Filing 16. Shortly thereafter, ABRH filed a Suggestion of Bankruptcy. (Filing 24). Pursuant to NEGenR 1.5(a)(1), the Court stayed this matter as to ABRH but allowed the case to proceed against Kunkle. Filing 25.

In support of its Motion to Compel, Defendants explain ABRH required Plaintiff to complete an online onboarding and orientation process that included review and acknowledgment of various employment-related agreements and documents when ABRH hired her in October 2014.

Filing 16-2 at 3. One such document was a Dispute Resolution Agreement (the "Agreement").

Filing 16-2 at 3, 6-8. The Agreement states in relevant part as follows:

> This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce. This Agreement applies to any dispute arising out of or related to the undersigned Employee's employment with ABRH, LLC or one of its affiliates, successor, subsidiaries or parent companies ("Company") or termination of employment and survives after the employment relationship terminates.
>
> . . . .
>
> Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement, but not as to the enforceability, revocability or validity of the Agreement or any portion of the Agreement. . . . Except as it otherwise provides, this Agreement also applies, without limitation, to disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, retaliation, discrimination, or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other state statutory and common law claims.

Filing 16-2 at 6.

A link to the Agreement and other onboarding paperwork was sent to Plaintiff's self-provided personal email address. Filing 16-2 at 3. To complete the paperwork, someone had to access it via the link emailed to Plaintiff, enter Plaintiff's email address as a username, use Plaintiff's zip code as the password, and subsequently enter Plaintiff's address, telephone number, date of birth, Social Security number, gender, marital status, and direct deposit banking information. Filing 16-2 at 3; Filing 23-1 at 4. ABRH's computer system requires an individual

3

filling out this required paperwork to complete and initial each document before moving to the next. Filing 23-1 at 5. Once a document is completed and signed, ABRH's computer system shows such documentation as "saved" within the system. Filing 23-1 at 5. That "saved" information "cannot be edited and no information can ever be deleted in the system." Filing 23-1 at 5.

On October 2, 2014, someone accessed the link sent to Plaintiff's email address, provided all of Plaintiff's above-listed personal information, electronically signed the Agreement by typing Plaintiff's initials, and in doing so expressly consented to the terms of the Agreement. Filing 16-2 at 4, 9 ("I have read the [Agreement], and I agree to the terms and conditions of the [Agreement]."). ABRH records show the individual accessing the link reviewed the Agreement for roughly four minutes. Filing 16-2 at 4. In the computer system, Plaintiff's onboarding paperwork shows "saved" next to the "ADR" document, which is the Agreement. Filing 16-2 at 11; Filing 23-1 at 5. The system also shows she completed a personal information form, her I-9 form, an emergency contact form, a direct deposit form, and numerous other forms before and after completing the Agreement. Filing 16-2 at 11; Filing 23-1 at 5. Plaintiff avers she has never seen, signed, or assented to the Agreement's terms. Filing 20-1 at 1. Yet ABRH did not in any way collect Plaintiff's personal, banking, tax, emergency, and other information outside of the online onboarding paperwork process. Filing 23-1 at 6.

On Plaintiff's first day of work, October 8, 2014, the system shows someone spent approximately one minute reviewing the Agreement before electronically signing it as part of Plaintiff's orientation. Filing 16-2 at 4. ABRH generally does not allow employees to continue online orientation or begin work until they have agreed to the terms of the Agreement. Filing 16-2 at 4. However, Plaintiff avers her orientation did not include anything relating to the Agreement. Filing 20-1 at 1.

## II. STANDARD OF REVIEW

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "[U]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under [an arbitration agreement]," the Court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. 9 U.S.C. § 3.

A motion to compel arbitration may be submitted under Rule 12(b)(6) or Rule 56, but it "must ultimately 'be treated as one for summary judgment under Rule 56.'" *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 882 (8th Cir. 2017) (quoting Fed. R. Civ. P. 12(d)). "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). "[T]here must be more than 'the mere existence of some alleged factual dispute'" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Missouri, Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

## III. DISCUSSION

Defendants argue the Court should compel arbitration and dismiss or stay this case because Plaintiff's claims are within the scope of the Agreement, a binding arbitration contract. Filing 16-

1 at 5-11. Plaintiff contests the validity of the Agreement and its applicability to Kunkle, and she alternatively argues several of Kunkle's claims are outside the scope of the Agreement. Filing 19 at 3-6. "Two questions are pertinent when [considering] . . . a motion to compel arbitration: (1) whether the parties entered a valid arbitration agreement, and, (2) if so, whether the parties' particular 'dispute falls within the scope of the arbitration agreement.'" *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873 (8th Cir. 2018) (quoting *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015)). Arbitration is a matter of contract, and "where a valid arbitration agreement exists, [courts] must liberally construe it, resolving any doubts in favor of arbitration . . . ." *Id.* (internal quotations omitted). As discussed below, the Court finds (1) this matter is stayed as to ABRH and therefore the Court will deny the motion as to ABRH without prejudice to reassertion; (2) the Agreement is a valid contract under Nebraska law and applies Kunkle; and (2) all claims against Kunkle are arguably within the scope of the Agreement.

**A. The Court's Stay**

After filing it joint Motion to Dismiss or Compel (Filing 16), ABRH filed a Suggestion of Bankruptcy informing the Court that it had previously filed for Chapter 11 bankruptcy, and, pursuant to 11 U.S.C. § 362(a), this matter was automatically stayed. Filing 24. As a result, the Court stayed this action only as to ABRH pursuant to 11 U.S.C. § 362(a) and NEGenR 1.5(a)(1). *See* Filing 25. Because this case is stayed as to ABRH, the Court denies ABRH's motion to compel arbitration without prejudice to reassertion upon conclusion of its bankruptcy proceedings or lifting of the stay. *See Picco v. Glob. Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990) (After a bankruptcy court automatically stays other proceedings, "other district courts retain jurisdiction

to determine the applicability of the stay to litigation pending before them, and to enter orders not inconsistent with the terms of the stay.")[1]

However, the Court proceeds to address the present motion as brought by Kunkle because the Court expressly excepted Kunkle from the bankruptcy-related stay in its Order (Filing 25). *See Am. Prairie Const. Co. v. Hoich*, 560 F.3d 780, 789 (8th Cir. 2009) ("It is well-established that stays pursuant to § 362(a) [relating to bankruptcy] are limited to debtors and do not encompass non-bankrupt co-defendants."); *see also Marquis Yachts v. Allied Marine Grp., Inc. (N.)*, No. CIV 09-1770 JRT/FLN, 2010 WL 1380137, at *3 (D. Minn. Mar. 31, 2010) ("[T]he stay applies only to proceedings "against the debtor.") (quoting *Martin–Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575, 577 (7th Cir. 1989); *Picco*, 900 F.2d at 850 ("The automatic stay of the bankruptcy court does not divest all other courts of jurisdiction to hear every claim that is in any way related to the bankruptcy proceeding.").

## B. Validity and Applicability

Based on Plaintiff's affidavit stating that she has never seen, signed, or assented to the Agreement's terms, Filing 20-1 at 1, Plaintiff argues the Agreement is not a valid contract because it lacks any offer or acceptance. Filing 19 at 3. She further argues Kunkle may not compel arbitration of the claims against her because she is not a party to the Agreement. Filing 19 at 5-6. Kunkle argues (1) Plaintiff's self-serving affidavit is insufficient to create a dispute of material fact as to Plaintiff's assent to the Agreement, and (2) Kunkle may enforce the agreement against Plaintiff. Filing 23 at 1-6. The Court agrees with Kunkle as discussed below.

*1. Validity*

---

[1] In denying the motion to compel arbitration filed by ABRH without prejudice to reassertion, the Court believes this provides the most flexibility to the parties and the Bankruptcy Court. ABRH can reassert the motion to arbitrate in this Court upon the lifting of the bankruptcy stay or address this issue with the Bankruptcy Court.

"[S]tate contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants" *Parm*, 898 F.3d at 873. To create a contract under Nebraska law, "there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract." *City of Scottsbluff v. Waste Connections of Nebraska, Inc.*, 282 Neb. 848, 861, 809 N.W.2d 725 (2011). In this case, the Agreement contained a space for signature or initials stating, "I have read the [Agreement], and I agree to the terms and conditions of the [Agreement]." Filing 16-2 at 4, 9. While Plaintiff claims and argues there is no offer, acceptance, or meeting of the minds because she never saw, signed, or assented to the Agreement's terms, Filing 20-1 at 1, her self-serving averments are insufficient to create a material dispute of fact about the formation of an arbitration contract.

Under the summary judgment standard, "[a] plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005); *see also Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006) ("[A] properly supported motion for summary judgment is not defeated by self-serving affidavits."). Plaintiff's affidavit claiming she never saw or signed the Agreement is self-serving and is nothing more than a collection of unsupported assertions. Kunkle points out that ABRH sent a link to the Agreement and other onboarding paperwork to an email address provided by Plaintiff. Filing 16-2 at 3. To fill out the paperwork, which was completed, someone had to access it via the emailed link, enter Plaintiff's email address as a username, use Plaintiff's zip code as the password, and subsequently enter Plaintiff's address, telephone number, date of birth, Social Security number, gender, marital status, and direct deposit banking information. Filing 16-2 at 3; Filing 23-1 at 4. ABRH did not in any way collect Plaintiff's personal, banking, tax, emergency, and other information outside of

this online onboarding paperwork process. Filing 23-1 at 6. No one but Plaintiff would have all of this personal information about Plaintiff and access to her email account.

Further, ABRH's computer system shows Plaintiff's onboarding paperwork, such as the Agreement, a personal information form, an I-9 form, an emergency contact form, and a direct deposit form, as "saved." Filing 16-2 at 11; Filing 23-1 at 5. The computer system only shows a document as "saved" once it has been completed and signed with the signer's initials. Filing 23-1 at 5. That "saved" information "cannot be edited and no information can ever be deleted in the system." Filing 23-1 at 5. ABRH's computer system records show Plaintiff reviewed the Agreement for roughly four minutes prior to signing. Filing 16-2 at 4.

In the light of the computer records and affidavit provided by Kunkle, Plaintiff's unsupported affidavit is insufficient to dispute her receipt of the Agreement, review of it, and assent to its terms. Accordingly, the Court finds the Agreement is a valid contract.

2. *Applicability*

While the Agreement is valid, the question of whether it applies to Kunkle remains. Plaintiff fleetingly argues the Agreement does not apply to nonsignatory Kunkle but does not provide any case law in support of this contention.

"[S]tate contract law governs the ability of nonsignatories to enforce arbitration provisions. *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 732 (8th Cir. 2009) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 129 S. Ct. 1896, 173 L. Ed. 2d 832 (2009) ("[A] litigant who was not a party to the relevant arbitration agreement may invoke § 3 [of the Federal Arbitration Act] if the relevant state contract law allows him to enforce the agreement."). The parties both cite Nebraska law when discussing the validity of the Agreement and therefore agree that Nebraska contract law governs the threshold arbitrability issues in this case. However, the

parties do not cite, and the Court has not found, any Nebraska cases addressing a nonsignatory's ability to compel arbitration. *Arctic Glacier U.S.A., Inc. v. Principal Life Ins. Co.*, No. 8:17CV214, 2017 WL 3700887, at *2 (D. Neb. Aug. 24, 2017) (noting a lack of Nebraska case law considering whether nonsignatories may compel arbitration).

"'Traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and *estoppel*.'" *Arthur Andersen LLP*, 556 U.S. at 631 (emphasis supplied) (quoting 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed. 2001)). Nebraska generally follows these traditional principles. *See, e.g.*, *Lingenfelter v. Lower Elkhorn Nat. Res. Dist.*, 294 Neb. 46, 70, 881 N.W.2d 892, 910 (2016) ("The doctrine of equitable estoppel applies where, as a result of conduct of a party upon which another person has in good faith relied to one's detriment, the acting party is absolutely precluded, both at law and in equity, from asserting rights which might have otherwise existed.") Nebraska courts have also acknowledged that other jurisdictions have employed equitable estoppel in the context of nonsignatories compelling arbitration. *See Pearce v. Mut. of Omaha Ins. Co.*, 293 Neb. 277, 287, 876 N.W.2d 899, 907 (2016) (noting that "other jurisdictions have applied equitable principles of estoppel to compel nonsignatories to participate in an arbitration" but not reaching the issue because it was not properly preserved);

"When a state's highest court has not decided an issue, it is up to this court to predict how the state's highest court would resolve that issue." *Cont'l Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1007 (8th Cir. 2006). Numerous other courts and cases, including within this district, allow nonsignatories to enforce arbitration agreements executed by others, particularly for claims against both employers and their agents or managers. In *Arctic Glacier U.S.A., Inc.*, 2017

WL 3700887, at *2, the Honorable Robert F. Rossiter determined the Nebraska Supreme Court would follow persuasive authority and enforce an arbitration agreement against a corporate successor or third-party beneficiary nonsignatory. *See also Wolfe Elec. Co. v. Corp. Bus. Sols., Inc.*, No. 4:13CV3040, 2013 WL 1914674, at *6 (D. Neb. May 8, 2013) (applying alternative estoppel and allowing nonsignatory to compel arbitration against signatory because there was "concerted" or "intertwined" misconduct between defendants).

In *Finnie v. H & R Block Fin. Advisors, Inc.*, 307 F. App'x 19, 21 (8th Cir. 2009), the court determined that a nonsignatory supervisor was entitled to enforce the employer's arbitration agreement against the plaintiff. Similarly, in *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 834 (8th Cir. 2010), the court held that "a nonsignatory may compel a signatory to arbitrate claims in limited circumstances" such as when a close relationship between signatory and nonsignatory exists. Failure to compel arbitration of claims against a nonsignatory agent of a signatory "would eviscerate the arbitration agreement." *Id.* (citing *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798–99 (8th Cir. 2005)); *see also Nitro Distrib., Inc. v. Alticor, Inc.*, 453 F.3d 995, 999 (8th Cir. 2006) (citing *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121 (3d Cir. 1993) (applying a "traditional agency theory" regarding a nonsignatory employee of a signatory*); Pruteanu v. Team Select Home Care of Missouri, Inc.*, No. 4:18-CV-01640-AGF, 2019 WL 7195086, at *5 (E.D. Mo. Dec. 26, 2019) ("Missouri courts have applied the principles of alternative equitable estoppel set forth by the Eighth Circuit."); *Giddings v. Media Lodge, Inc.*, 320 F. Supp. 3d 1064, 1081 (D.S.D. 2018) (citing *Finnie*, 307 F. App'x 19, and relying on South Dakota case law allowing nonsignatory agents to compel arbitration against signatory).

Given this persuasive case law, the Court will allow Kunkle, a nonsignatory, to compel arbitration of Plaintiff's claims against her if they are within the scope of the Agreement because

11

(1) Kunkle is an agent of ABRH; (2) allowing Plaintiff to sue Kunkle for employment-related claims covered by the Agreement would limit the Agreement's effectiveness; and (3) many of Plaintiff's claims against Kunkle are synonymous or intertwined with her claims against ABRH.

### C. Scope

"[I]f an enforceable agreement exists, the federal substantive law of arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement." *Parm*, 898 F.3d at 873 (quoting *Donaldson Co.*, 581 F.3d at 731. Courts must liberally construe valid arbitration agreements and "resolv[e] any doubts in favor of arbitration . . . unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Unison Co.*, 789 F.3d at 818. In order to determine if claims fall within the scope of an arbitration clause, the Court must determine "whether the arbitration clause is broad or narrow." *Parm*, 898 F.3d at 874 (quoting *Unison Co.*, 789 F.3d at 818). "Arbitration clauses covering claims 'arising out of' or 'relating to' an agreement are broad." *Id.* (citing *Zetor N. Am., Inc. v. Rozeboom*, 861 F.3d 807, 810 (8th Cir. 2017)). Indeed, "[s]uch a provision constitutes the broadest language the parties could reasonably use to subject their disputes to that form of settlement, including collateral disputes that relate to the agreement containing the clause." *Id.* In applying a broad clause, courts ask whether "the underlying factual allegations simply touch matters covered by the arbitration provision." *Id.* at 875.

Here, the Agreement broadly "applies to any dispute *arising out of or related to*" Plaintiff's employment with ABRH "or termination of employment . . . ." Filing 16-2 at 6 (emphasis supplied). More specifically, it applies to the following:

> [D]isputes regarding the *employment relationship*, trade secrets, unfair competition, *compensation*, breaks and rest periods, *termination*, *retaliation*, discrimination, or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age

> Discrimination in Employment Act, *Family Medical Leave Act*, Fair Labor Standards Act, *Employee Retirement Income Security Act* (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other *state statutory and common law claims*."

Filing 16-2 at 6 (emphasis supplied).

Bearing in mind the Agreement's broad arbitration language and a presumption of arbitrability, the Court turns to Plaintiff's Complaint to analyze whether the facts underlying each claim "simply touch matters covered by the arbitration provision." *Parm*, 898 F.3d at 875. First, the Court addresses Plaintiff's defamation claim at count one of her Complaint. Filing 1 at 1. Plaintiff argues this claim is outside the scope of the Agreement because it is not related to Plaintiff's employment. Filing 19 at 6. However, the allegedly defamatory statements were made by Kunkle, Plaintiff's employment supervisor, while in the workplace, and Kunkle allegedly made those statements to Village Inn employees and managers, among "others." Filing 1 at 1, 3. This conduct and these statements clearly touch matters covered by the Agreement, namely "state statutory and common law claims" which are "related to" Plaintiff's employment. *See* Filing 16-2 at 6. As a result, Plaintiff's defamation claim falls within the scope of the Agreement.

Plaintiff also alleges Kunkle interfered with and violated her rights under the FMLA (counts two through five). Filing 1 at 4-7. Plaintiff, however, does not argue that her FMLA claims are outside the Agreement's scope, presumably because the Agreement expressly requires arbitration of disputes regarding compensation, termination, retaliation, and the FMLA. *See* Filing 16-2 at 6. These claims are within the scope of the Agreement. All other claims (counts six through eight) are solely against ABRH, and as previously discussed, this matter is stayed as to ABRH.

13

At a minimum, all of Plaintiff's claims against Kunkle and "the underlying factual allegations simply touch matters covered by the arbitration provision" and are therefore within the scope of the Agreement. *Parm*, 898 F.3d at 875.

### D. Request for Stay

Kunkle asks the Court to dismiss this matter pending arbitration "rather than taking the traditional course of staying the case while the parties arbitrate." Filing 16-1 at 12. Alternatively, Kunkle requests a stay. Filing 16-1 at 12. "The [Federal Arbitration Act] generally requires a federal district court to stay an action pending an arbitration, rather than to dismiss it." *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) (citing 9 U.S.C. § 3) (stating the district court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"). However, there is "a judicially-created exception to the general rule which indicates district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." *Id.* at 769–70. While dismissal is well within the Court's discretion, the Court declines to dismiss this action and will instead issue a stay pending arbitration.

### IV. CONCLUSION

For the foregoing reasons, the Court denies ABRH's Motion to Dismiss or Compel Arbitration pursuant to the stay and grants Kunkle's Motion to Compel Arbitration.

IT IS THEREFORE ORDERED:

1. Defendant ABRH's Motion to Dismiss or Compel Arbitration (Filing 16) is denied without prejudice to reassertion upon conclusion of its bankruptcy proceedings or lifting of the stay;

2. This matter remains stayed as between Plaintiff and defendant ABRH pursuant to the Court's prior order ([Filing 25](#));

3. Plaintiff and defendant ABRH shall file a joint status report regarding the progression of the bankruptcy proceedings every ninety days from the date of this Order;

4. Defendant Kunkle's Motion to Compel Arbitration ([Filing 16](#)) is granted but her alternative Motion to Dismiss is denied;

5. This matter is stayed as between Plaintiff and defendant Kunkle pending arbitration; and

6. Plaintiff and defendant Kunkle shall file a joint status report regarding the progress of arbitration proceedings every ninety days from the date of this Order.

Dated this 20th day of March, 2020.

BY THE COURT:

*[signature]*

Brian C. Buescher
United States District Judge